IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| ALBERT RAY ALLISON, III § | CASE NO: 06-30040 |
|   Debtor § | |
| § | CHAPTER 13 |

### MEMORANDUM OPINION ON UNION FEDERAL'S MOTION TO DISMISS

On July 6, 2006, Union Federal Bank of Indianapolis ("Union Federal") filed a motion to dismiss the Debtor's bankruptcy petition [docket no. 50]. For the reasons set forth below, the motion is denied.

### Background

On or around February 28, 2001,[1] Allison Development-Columbus, Inc. ("Allison Development") executed a promissory note in the amount of $1,100,000 payable to Union Federal (the "Note"). The Note was signed by the Debtor, as President of Allison Development. On that same day,[2] the Debtor personally guaranteed the Note to Union Federal (the "Guaranty"). The loan was subsequently modified and extended on April 24, 2003, and December 11, 2004. A renewal promissory note and guarantor ratification were signed by the Debtor on April 24, 2003.

On January 2, 2006, the Debtor filed a voluntary bankruptcy petition under chapter 13. On February 17, 2006, the § 341 meeting of creditors was held and concluded. Pursuant to Bankruptcy Rule 3002(c), the deadline for filing a proof of claim was May 18, 2006. The Debtor's confirmation hearing was originally scheduled for March 23, 2006 but was rescheduled to May 24, 2006. Because no objections to confirmation were filed five days prior to the

---

[1] The original note is dated February 26, 2001. However, it appears that the actual execution of the documents occurred on February 28, 2001.

[2] This date is disputed by the Debtor and will be discussed below.

1

confirmation hearing as required by the local bankruptcy rules, on May 23, 2006, the Court entered an order confirming the Debtor's chapter 13 plan. On May 30, 2006, Union Federal filed a proof of claim in the amount of $1,042,135.82 based on the Debtor's personal guarantee.[3]

On July 6, 2006, Union Federal filed a motion to dismiss the Debtor's chapter 13 case. Union Federal argues that the Debtor is ineligible to be a debtor under chapter 13. The Debtor objects to the requested relief. He argues that Union Federal lacks standing to seek dismissal and that such arguments are untimely. On August 7, 2006, the Court held a hearing on this matter. Union Federal stipulated that it did not timely file a proof of claim.

## Analysis

Upon request of a party in interest, and after notice and a hearing, the Court may dismiss a chapter 13 case for cause. 11 U.S.C. § 1307(c). In particular, § 1307(c) provides:

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate for cause.

11 U.S.C. § 1307(c).

*1. Standing*

*a. Party in Interest*

The Debtor argues that Union Federal lacks standing to file a motion to dismiss because it is not a party in interest. The term "party in interest" is not defined in the Bankruptcy Code. Although some courts have defined the term narrowly to include only those parties with an "allowed claim,"[4] there is no language in the Code to indicate that Congress intended such a

---

[3] On June 1, 2006, Union Federal filed a motion for leave to file a late proof of claim. However, on July 7, 2006, Union Federal withdrew this motion.

[4] *Nintendo Co. Ltd. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995) (defining party in interest for purposes of § 350(b) and Rule 5010); *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5

narrow definition.  *See, e.g., In re Linkous*, 990 F.2d 160, 164 n.4 (4th Cir. 1993) (dissenting). Had Congress intended to limit the definition of "party in interest" to only those creditors who file a proof of claim, it could have done so.

A more accurate definition of "party in interest" includes any creditor of the debtor and "any other person with a sufficient stake in [the] outcome of a proceeding so as to require representation." *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V.*, 347 F.3d 589, 595 (5th Cir. 2003); *see also,* 11 U.S.C. § 1109(b) ("party in interest" includes any creditor); *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) ("courts must determine on a case-by-case basis whether the prospective party in interest has sufficient stake in the proceeding so as to require representation"); *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983); *In re B. Cohen & Sons Caterers, Inc.*, 124 B.R. 642, 645 (E.D. Pa. 1991).  A creditor is defined as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(9)(A).  A claim is defined as "the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).

The Debtor contends that Union Federal is not a creditor, and therefore lacks standing, because the Debtor's personal guarantee of Allison Development's debt is invalid under state law.  Alternatively, if the personal guarantee is determined to be valid, the Debtor argues that Union Federal lacks standing because no timely proof of claim was filed.

---

F.3d 750, 756 (4th Cir. 1993) (defining party in interest for purposes of § 102(1)); *In re Hansel*, 160 B.R. 66, 72-73 (Bankr. S.D. Tex. 1993) (defining party in interest for purposes of § 502(a)).

*b. Validity of the Guaranty*

The Guaranty states that the Debtor guarantees to Union Federal the prompt payment when due of "all indebtedness now or hereafter evidenced by or arising under that certain Promissory Note … of even date herewith …." The Debtor disputes the validity of the personal guarantee because the Guaranty is dated February 28, 2000, while the Note is dated February 26, 2001. Thus, the Debtor argues that no valid note of even date herewith exists, and therefore the Guaranty is invalid.

The Court disagrees. The evidence shows that this was simply a clerical mistake and immaterial to the parties' intentions to the contract. The Debtor testified that it is his signature on the guarantee dated February 28, 2000. He also testified that he had no dealings with Union Federal in 2000, that it is undisputed that Union Federal advanced $1.9 million to Allison Development in 2001, and that the $1.9 million was advanced on behalf of his company which received the funds.

On April 24, 2003, and again on December 11, 2004, the Debtor signed a Loan Modification and Extension Agreement on behalf of Allison Development. This agreement states that "[Allison Development] executed and delivered to [Union Federal] that certain Promissory Note dated February 28, 2001, in the principal sum of [$1,100,000]." The Debtor signed a Guarantor Ratification on April 24, 2003, which stated that the Debtor "ratifies and confirms the Guaranty, dated February 26, 2001 … executed by the undersigned and delivered to [Union Federal] pertaining to the indebtedness and obligations of [Allison Development] to [Union Federal]." On June 14, 2005, the Debtor executed an agreement for deed in lieu of foreclosure to Union Federal on behalf of Allison Development (the "Agreement"). The Agreement refers to a "Promissory Note and all renewal notes [] dated February 26, 2001, in the

4

principal sum of $1,100,000.00 and payable to [Union Federal]" and provides that "nothing contained herein shall be construed as a waiver or release of [Union Federal's] right to pursue the collection of the unpaid balance of the Note … against the personal Guaranty of Albert Ray Allison, III."

Based on the evidence, the Court finds that the Note and Guaranty were each signed in February 2001 on or about the same date. By mistake or oversight, the Guaranty was dated with the year 2000 when it should have been dated 2001. This inadvertent error with respect to the date of the contract does not render the parties' intentions or obligations ambiguous. *See, e.g., Begner v. United States*, 428 F.3d 998, 1007 (11th Cir. 2005).

Allison Development received a credit of $866,410 on the debt represented by the Note and renewal documents on June 14, 2005. Thus, on the Debtor's petition date, Union Federal was a creditor with a right to collect the unpaid balance of the Note from the Debtor pursuant to the Guaranty and state law. Union Federal was a creditor of the Debtor within the meaning of the Code.

*c. Failure to File a Proof of Claim*

Notwithstanding the Guaranty's validity, the Debtor argues that Union Federal lacks standing since it failed to timely file a proof of claim. It is undisputed that Union Federal's claim was untimely. However, a creditor's failure to file a timely proof of claim does not automatically eliminate its status as a creditor. Whether or not a proof of claim was filed, Union Federal has a significant stake in the Debtor's chapter 13 case. If the Debtor completes his plan and receives a chapter 13 discharge, any debt owed to Union Federal pursuant to the guarantee will be discharged. *See* 11 U.S.C. §§ 1328, 524. This will occur even though Union Federal failed to file a proof of claim. Under § 1328(a), if a debtor makes all payments called for under

his plan, the debtor obtains a discharge of all debts provided for in the plan. A plan provides for a debt if it includes a provision for the claim and the holder of a claim has notice of the bankruptcy filing in time to participate by filing a timely proof of claim. *In re Bryant*, 323 B.R. 635, 641-44 (Bankr. E.D. Pa. 2005) (citing *Rake v. Wade*, 508 U.S. 464, 473 (1993)); *In re Ellett*, 317 B.R. 134, 138 (Bankr. E.D. Cal. 2004). Union Federal received notice of the bankruptcy filing. The Debtor scheduled the debt owed to Union Federal on Schedule F. The Debtor's chapter 13 plan confirmed by the Court requires the Debtor to pay a 0% dividend to holders of general unsecured claims over 60 months. Thus, the Debtor's chapter 13 plan provides for the debt owed to Union Federal and such debt will be discharged if the Court grants the Debtor a § 1328 discharge. *See, e.g., In re Hairopoulos*, 118 F.3d 1240, 1244 (8th Cir. 1997) (debt provided for in plan when plan acknowledges the debt even though the plan does not propose to make any payments on the claim). However, if Union Federal's motion to dismiss is granted, the debt will not be discharged and Union Federal will continue to enjoy nonbankruptcy legal rights related to the Debtor's guarantee. Thus, the confirmation of the Debtor's plan and any subsequent discharge would affect Union Federal's state law rights to pursue and enforce the Debtor's personal guarantee. Accordingly, the Court finds that Union Federal has standing to file the motion to dismiss.

*2. Effect of Confirmation*

In its motion, Union Federal argues that the Debtor is ineligible to be a debtor under chapter 13 because he exceeds the debt threshold limit established by § 109(e). Section 109(e) provides that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975…may be a debtor under chapter 13 of this title."

6

11 U.S.C. § 109(e). The Debtor lists Union Federal's claim on Schedule F in the amount of $1.2 million, and lists the debt as contingent, unliquidated and disputed. Union Federal argues that this debt alone precludes the Debtor's eligibility as a chapter 13 debtor.

A final confirmation order is generally res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing, including a debtor's eligibility to commence a chapter 13 case. *See* 11 U.S.C. § 1327(a); 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (15th ed. rev. 2006); *In re Layo*, 2006 WL 2348551 (2d Cir. Aug. 15, 2006) (chapter 13); *In re Howard*, 972 F.2d 639, 641 (5th Cir. 1992) (recognizing an exception to the res judicata effect of the confirmation process with respect to secured creditors); *Eubanks v. F.D.I.C.*, 977 F.2d 166, 171 (5th Cir. 1992) (chapter 11); *Shoaf*, 815 F.2d at 1049-50; *United States v. Johnson*, 267 BR 717, 721 (N.D. Tex. 2001) (chapter 13); *United States v. Edmonston*, 99 B.R. 995, 998 (E.D. Cal. 1989); *In re Jarvis*, 78 BR 288, 289 (Bankr. D. Or. 1987); *see also*, *Franklin Fed. Bancorp, FSB v. Lochamy (In re Lochamy)*, 197 B.R. 384 (Bankr. N.D. Ga. 1995) (although motion to dismiss filed five days prior to confirmation, creditor slept on its rights at confirmation hearing which became res judicata as to issue of § 109(e) eligibility). The res judicata effect of a confirmation order supports the strong policy favoring finality in the reorganization process. *See, e.g., In re Layo*, 2006 WL 2348551 at *3-4.

Although the Court entered an order confirming the Debtor's chapter 13 plan on May 23, 2006, Union Federal contends there was no final adjudication on the merits because the order was entered prior to the scheduled confirmation hearing on May 24, 2006. Federal Rule of Bankruptcy Procedure 3015 provides that "[i]f no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." FED. R. BANKR. P. 3015(f). The Southern District

7

of Texas Bankruptcy Local Rules provide that "[c]onfirmation will be set with a uniform notice, in the form promulgated from time to time by the Bankruptcy Court." BLR 3015(c). The Court's published Procedures for Administration of Chapter 13 Bankruptcy Cases provide that "[t]he notice shall advise creditors that the deadline for filing objections to confirmation of the plan is 5 days before the date set for confirmation." The Initial Notice By Clerk, issued on January 25, 2006, stated in bold print that: "The deadline to object to confirmation or the valuation motion is five days before the hearing. Objections must be filed in writing." [Docket no. 12]. Similarly, the Confirmation Notice sent by the trustee on January 25, 2006, provided that "[i]f you object to confirmation of the plan, you must file your objection at least five days before the confirmation hearing and serve a copy of the objection on the debtor, the debtor(s)' counsel, the chapter 13 trustee, and parties requesting notice." [Docket no. 13]. Each of these notices was served on Union Federal. No objections to confirmation were filed by May 19, 2006, as required by the local bankruptcy rules. The Court confirmed the Debtor's plan and disposed of the Debtor's liability to Union Federal pursuant to bankruptcy law on May 23, 2006. Because the confirmation order was not appealed, it is a final order with res judicata effect.[5] *See, e.g., Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir. 1992).

Implicit in the Court's May 23, 2006 confirmation order was a determination of the Debtor's eligibility for chapter 13 relief. Union Federal could have contested the proposed plan of reorganization by filing an objection. No written objection was filed. Although Union Federal contends that it appeared at the scheduled confirmation hearing on May 24, 2006, no

---

[5] Union Federal filed a motion to reconsider the confirmation order on May 23, 2006. However, this motion was withdrawn on May 24, 2006. On June 1, 2006, Union Federal filed an amended motion to reconsider which it withdrew on July 10, 2006.

timely objection was filed in accordance with the rules.[6] If Union Federal believed the Debtor's plan was confirmed in error because the Debtor exceeded the threshold eligibility requirements in § 109(e), the proper remedy was to file an appeal and seek review of the Court's confirmation order. No appeal was taken. Consequently, the Court's order confirming the Debtor's chapter 13 plan is a final judgment that is protected from collateral attack.

*3. Subject Matter Jurisdiction v. Eligibility*

Alternatively, Union Federal argues that because the Debtor was ineligible to be a chapter 13 debtor pursuant to § 109(e), this Court lacks subject matter jurisdiction and must dismiss this case. Union Federal cites two opinions issued by this Court, *In re Hubbard*, 333 B.R. 377 (Bankr. S.D. Tex. 2005) and *In re Salazar*, 339 B.R. 622 (Bankr. S.D. Tex. 2006), as support for its argument that *Promenade Nat'l Bank v. Phillips (In re Phillips)*, 844 F.2d 230 (5th Cir. 1988) is no longer applicable and for its position that the eligibility requirements of § 109 cannot be waived. Union Federal's reliance on these opinions is misplaced.

In *Phillips*, the Fifth Circuit, addressed a creditor's argument that the eligibility limits of § 109(g) are jurisdictional:

> The Bank had argued that eligibility under § 109(g) raised an issue of subject matter jurisdiction. We disagree. The Bank cited several bankruptcy court cases stating or assuming that whether a person is eligible under § 109(g) is jurisdictional. Numerous other courts, however, have concluded that the eligibility issue is not jurisdictional. Moreover, the courts holding that the issue is not jurisdictional generally have engaged in an analysis of the issue, while the courts holding that it is a matter of jurisdiction have not. For example, in *In re Republic Trust & Sav. Co.,* [59 B.R. 606, 609 n.1 (Bankr. N.D. Okla. 1986)] the court stated:
>
>> In a sense, every decision by a court to grant or withhold relief involves 'jurisdiction'-its exercise not its lack. Cases can be dismissed, and relief withheld, for reasons other than lack of

---

[6] Union Federal argues that the requirements of § 109 may not be waived. Because res judicata applies it is unnecessary to address the doctrine of waiver.

9

> subject-matter jurisdiction. 11 U.S.C. § 109 collects several such reasons, whose non-jurisdictional character may be indicated by examples.

As stated by the court in *In re Johnson,* [13 B.R. 342, 346 (Bankr. D. Minn. 1981)], subject matter jurisdiction of the bankruptcy court comes from … [Title 28]. On the other hand, issues pertaining to whether a debtor meets the requirements of § 109(g)(2) only 'determine whether or not the court must dismiss the case. They are factual or legal questions which the court must determine. They are the issues raised by the pleadings. They are defenses not jurisdictional requirements.'

The Bank has cited [*In re Keziah*, 46 B.R. 551, 554 (Bankr. W.D.N.C. 1985), which] states that if Congress had wished to grant the bankruptcy court discretion:

> It would have placed the 180 day rule in a Code section other than § 109. For example, § 109(f) could have been made a part of § 707, § 1112, or § 1325 thereby giving the Courts the opportunity to exercise discretion in the application of its provisions. However, § 109 is a part of the eligibility (to be a debtor) section which involves the subject matter jurisdiction of this Court. The 180-day rule having been placed there, the Court has no choice but to apply it; for indeed, it lacks the power to do otherwise.

The *Keziah* court reasoned that it is unlikely that Congress would have made the rule part of the eligibility requirement (which it *assumes* is a jurisdictional requirement), had Congress intended to grant the bankruptcy court discretion. It is even more unlikely, however, that, had Congress intended to create a jurisdictional statute, it would not have framed § 109(g)(2) in terms explicitly referring to jurisdiction instead of referring only to eligibility. It also is unlikely that, had Congress intended that the bankruptcy courts would lack jurisdiction when a debtor was ineligible, it would have provided creditors with the alternative procedures of: (1) objecting to discharges of ineligible debtors pursuant to §§ 523 or 727 of the Bankruptcy Code; or (2) appealing the denial of a motion to dismiss the petition and simultaneously staying any further proceedings pursuant to Bankruptcy Rule 8005.

To hold that the issue of debtor eligibility implicates subject matter jurisdiction would have far-reaching consequences. If eligibility raised an issue of subject matter jurisdiction, the parties could not expressly waive, or be held to have waived, their objections on the issue. More important, the issue may, and indeed must, be raised on appeal, even on the court's own motion.

In short, a closer analysis of the question indicates that eligibility does not raise an issue of subject matter jurisdiction.

*In re Phillips*, 844 F.2d at 236 n.2 (citations omitted).[7] The view that § 109 eligibility is not jurisdictional has been adopted by a majority of courts. *See, e.g.*, 2 COLLIER ON BANKRUPTCY ¶ 109.01[2] (15th ed. rev. 2006); *Hamilton Creek Metro. Dist. v. Bondholders Col. Bondshares (In re Hamilton Creek Metro. Dist.)*, 143 F.3d 1381, 1385 n.2 (10th Cir. 1998); *In re Wenberg*, 94 B.R. 631, 637 (9th Cir. 1988), aff'd 902 F.2d 768 (9th Cir. 1990); *see also Marlar v. Williams (In re Marlar)*, 432 F.3d 813, 814-15 (8th Cir. 2005) (a debtor's status as a farmer is not a question of jurisdiction, but is an affirmative defense that must be raised). Union Federal argues, however, that the holding in *Phillips* is superseded by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and this Court's post-BAPCPA decisions in *Hubbard* and *Salazar*.

In *Hubbard*, the Court held that individual debtors who fail to comply with § 109(h) are not eligible to file bankruptcy. *Hubbard*, 333 B.R. at 388. The Court explained that because such an individual is ineligible to be a debtor, the individual's voluntary petition did not commence a case under chapter 13. *Id.* Therefore, the Court struck the petition since there was no chapter 13 case to dismiss. *Id.* In *Salazar*, the Court extended this reasoning and held that no automatic stay is created by the filing of a bankruptcy petition by an individual who fails to obtain pre-petition credit counseling and is therefore ineligible for bankruptcy relief. *Salazar*, 339 B.R. at 632. In neither *Hubbard* nor *Salazar* did the Court refer to a lack of subject matter jurisdiction or imply that a debtor's compliance with § 109(h) is a prerequisite to the Court's assertion of subject matter jurisdiction. Union Federal's reliance on such an argument is in error.[8]

---

[7] In *Phillips*, the Fifth Circuit addressed whether the court had subject matter jurisdiction to hear an appeal from a district court order entered on appeal from an interlocutory order issued by the bankruptcy court.

[8] The Court recognizes that other courts have held that a debtor's eligibility pursuant to § 109(h) is synonymous with a bankruptcy court's subject matter jurisdiction. *See, e.g., In re Hawkins*, 340 B.R. 642, 645 (Bankr. D.D.C. 2006).

The Court agrees with the Fifth Circuit and the majority of courts which conclude that § 109 eligibility is not jurisdictional. As Collier on Bankruptcy explains:

> Section 109 is not characterized in terms of venue or jurisdiction by the statute itself, and it is clear that it is not jurisdictional. Section 109 is a rule governing eligibility for relief. If a debtor ineligible for relief under a particular chapter files a case and no party raises the issue of ineligibility, the relief that the debtor may receive under that chapter may not subsequently be successfully challenged for lack of jurisdiction. Moreover, since lack of eligibility for relief is grounds for denial of confirmation in chapters 11, 12 and 13, confirmation of a plan is normally res judicata with respect to the issue of jurisdiction.

2 COLLIER ON BANKRUPTCY ¶ 109.01[2] (15th ed. rev. 2006).

Indeed, the Fifth Circuit has consistently held that bankruptcy subject matter jurisdiction is determined by the provisions of 28 U.S.C. § 1334. *In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999); *In re Walker*, 51 F.3d 562, 568 (5th Cir. 1995); *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir. 1988). Union Federal asks the Court to make § 109 of title 11 a jurisdictional dictate equivalent to that contained in § 1334 of title 28. This Court declines the invitation.

At a minimum, a bankruptcy court has jurisdiction to determine its own jurisdiction. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 291 (1947); *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985). Section 1334(a) of title 28 grants the district court (and their bankruptcy units pursuant to 28 U.S.C. § 157) "original and exclusive jurisdiction of all cases under title 11." The term "cases" as used in § 1334(a) refers to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302 or 303. *In re Canion*, 196 F.3d at 585; *In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987). Thus, upon the filing of a petition, a court has jurisdiction over

---

However, as discussed *infra*, a finding that a debtor was ineligible does not automatically preclude a bankruptcy court from exercising jurisdiction. Similarly, a bankruptcy court's exercise of jurisdiction is not contingent upon the existence of the automatic stay. *See, e.g., In re Elmendorf*, 345 B.R. 486, 499 (Bankr. S.D.N.Y. 2006) (a court "can exercise jurisdiction over bankruptcy filings even if the automatic stay does not apply or has been terminated").

the purported bankruptcy case until it is determined that the putative debtor is ineligible to be a debtor and the court strikes or dismisses the petition. Those who are not eligible may not obtain the benefits of the automatic stay, *In re Salazar*, 339 B.R. 622, 632 (Bankr. S.D. Tex. 2006)), may not confirm plans (*In re Dillon*, 138 Fed. Appx. 609, 612 (5th Cir. 2005)), and may not obtain a bankruptcy discharge (*Gould v. Gregg, Hart, Farris & Rutledge*, 137 B.R. 761, 765 (W.D. Ark. 1992)). Nevertheless, eligibility determinations are often fact intensive and may take weeks or months to resolve. Pending their resolution, the bankruptcy court may issue interim orders granting adequate protection to lienholders or allowing a debtor to use cash collateral and otherwise control the litigation that results from the filing of a bankruptcy petition. Pending a determination of eligibility, there may be substantial uncertainty. When eligibility is uncertain, the parties will not know whether the automatic stay was invoked by the filing of the petition.[9] During this period of uncertainty, the Court may issue interim orders to protect the putative debtor and his creditors. All of these activities are well within the Court's subject matter jurisdiction.

As set forth in more detail below, in this case, the Court issued a final order confirming the Debtor's chapter 13 plan. Both eligibility and subject matter jurisdiction determinations are inherent in the confirmation order. 11 U.S.C. §§ 1325(a)(1) and (7). No appeal was taken. As discussed above, the question of eligibility is now foreclosed.

The Fifth Circuit, in *Phillips*, teaches that this Court's subject matter jurisdiction exists separately from the determination of eligibility. The recent amendments to the Bankruptcy Code

---

[9] Section 362(a) provides that a petition filed under §§ 301, 302 or 303 invokes the automatic stay. Thus, pursuant to § 301(a), a chapter 13 case is commenced by the filing with the bankruptcy court of a chapter 13 petition by an individual who "may be a debtor under such chapter." Section 109(e) discusses who may be a chapter 13 debtor. Consequently, when read together, §§ 109(e), 301(a) and 362(a) provide that no stay can exist for an individual who files a chapter 13 petition but is ineligible to be a chapter 13 debtor pursuant to § 109(e). *Salazar*, 339 B.R. at 632.

do not affect the rationale behind *Phillips* nor modify the fundamental principle that the foundations of bankruptcy jurisdiction are located in 28 U.S.C. § 1334.

The issue of subject matter jurisdiction over an ineligible debtor is explicitly recognized in chapter 9 of the Bankruptcy Code.[10] Chapter 9 acknowledges a court's authority to dismiss a bankruptcy petition upon a finding of ineligibility subsequent to the filing of a purported bankruptcy case by a putative debtor. Section 921 provides that "a case under this chapter…is commenced by the filing under section 301 of this title of a petition under this chapter"[11] but that a court "may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title."[12]  11 U.S.C. § 921(a) and (c); *see also* FED. R. BANKR. P. 9011 (allowing a court to strike a petition). This language contemplates a situation in which a bankruptcy court has subject matter jurisdiction over a case pursuant to 28 U.S.C. § 1334 even though it is subsequently determined that the debtor was never eligible to be in bankruptcy and the court strikes or dismisses the petition pursuant to § 921(c). *See, e.g.*, 6 COLLIER ON BANKRUPTCY ¶ 921.04[4] (15th ed. rev. 2006); *Hamilton Creek Metro. Dist.*, 143 F.3d at 1387 (affirming the bankruptcy court's order dismissing the debtor's petition); *In re Slocum Lake Drainage Dist. of Lake County*, 336 B.R. 387, 391 (Bankr. N.D. Ill. 2006); *In re Town of Westlake, Tex.*, 211 B.R. 860 (Bankr. N.D. Tex. 1997).

---

[10] Although this is not a chapter 9 case, the Court considers these provisions to emphasize that subject matter jurisdiction under § 1334 is separate from eligibility.

[11] Section 301 provides:

(a) A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.
(b) The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

11 U.S.C. § 301.

[12] Section 109(c) provides that "[a]n entity may be a debtor under chapter 9 of this title if and only if such entity" meets five statutory requirements.  11 U.S.C. § 109(c).

The Court recognizes that upon a finding that a debtor is ineligible for relief under the Bankruptcy Code, its authority over a case and the parties involved is severely limited. Nonetheless, such a filing invokes the Court's subject matter jurisdiction. For example, a court's subsequent determination that a putative debtor is ineligible for bankruptcy relief, does not void any prior court orders or judgments. *Acosta v. Amoco Oil Co.*, 978 F. Supp. 703, 707-08 (S.D. Tex. 1997) (recognizing that a court that lacks subject matter jurisdiction still retains plenary jurisdiction over a case to enforce previous court orders).

Even assuming, *arguendo*, that it is later determined on appeal that a court never had subject matter jurisdiction over a party or case, such a finding does not automatically void the court's prior judgments. To the contrary, a final judgment will command res judicata effects even if the court lacked jurisdiction. *Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004) (although subject matter jurisdiction may be raised initially at the highest appellate level, it may not be attacked collaterally); *Durfee v. Duke*, 375 U.S. 106, 113 (1963) (recognizing the "doctrine of jurisdictional finality"); *Stoll v. Gottlieb*, 305 U.S. 165 (1938); *Pratt v. Ventas, Inc.*, 365 F.3d 514, 520-22 (6th Cir. 2004); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987); *Buckeye Indus., Inc. v. Sec'y of Labor*, 587 F.2d 231, 235 (5th Cir. 1979). In *Stoll v. Gottlieb*, the Supreme Court explained:

> We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation….Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.

*Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938).

Thus, once a court makes a determination that it has jurisdiction and renders a final decision, the decision is binding unless reversed on appeal even if that decision was erroneous. This is so even when the parties failed to litigate the issue of jurisdiction in the prior action since res judicata applies to both matters actually litigated and those matters that could have been litigated in the earlier action. This "bootstrap" principle was described by the Third Circuit:

> A void judgment remains void until such time jurisdiction is finally determined to exist, and, by virtue of the federal courts' jurisdiction to determine jurisdiction, is elevated by its 'bootstraps' to the status of a valid judgment, or litigation of the issue is precluded by the doctrine of res judicata.

*Page v. Schweiker*, 76 F.2d 150, 154 (3d Cir. 1986) (citations omitted) (holding that because the issue of standing was not presented to the district court, the court did not have authority to consider the issue on appeal); s*ee also, Kansas City S. Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1979).

In *Shoaf*, the Fifth Circuit held that the confirmation of a plan of reorganization that expressly released a third-party guarantor was to be given res judicata effect even though the plan provisions may have exceeded the powers set forth in the Bankruptcy Code. *Shoaf*, 815 F.2d at 1051-54 (noting that the creditor participated in the confirmation process). "[A] court by necessity has the authority to determine its own jurisdiction over the parties and subject matter, and does so either tacitly or expressly, by rendering judgment." *Id.* at 1052 (citing *Stoll*, 305 U.S. at 172). Although some courts originally required the issue of subject matter jurisdiction to be litigated and explicitly determined by the court, the Fifth Circuit explained that "the parties need only have had the opportunity to raise the question of jurisdiction" for res judicata to apply. *Id*. at 1052-53 (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 375 (1939)).

Similarly, in *Pratt*, the Sixth Circuit held that the bankruptcy court's confirmation order, which enjoined the plaintiffs from litigating their claims against the debtor's parent company, barred subsequent collateral attack for lack of jurisdiction because the plaintiffs failed to appeal the order and judgment was therefore final and res judicata. *Pratt*, 365 F.3d at 520-22.

Res judicata bars litigation of a claim previously litigated or one that should have been raised in an earlier suit if: (1) the parties are identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final adjudication on the merits; and (4) the same cause of action was involved in both cases. *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 326 (5th Cir. 2006); *Shoaf*, 815 F.2d at 1051.

Applying the *Liberto* factors to this case, the Court concludes that res judicata bars relitigation of the issue of this Court's subject matter jurisdiction. First, Union Federal and the Debtor were each parties throughout the confirmation process before this Bankruptcy Court and are again parties to Union Federal's motion to dismiss. The record shows that notices regarding the Debtor's bankruptcy were mailed to Union Federal beginning in January 2005. Although Union Federal did not raise any objection before the Court confirmed the Debtor's plan, Union Federal admits that it participated in the Debtor's bankruptcy and attended the Debtor's Rule 2004 examination on May 15, 2006. Thus, both Union Federal and the Debtor participated in the confirmation process and this action even if not formally named as parties.

Second, the Court has jurisdiction to determine both the Debtor's eligibility and issue an order confirming the Debtor's proposed plan of reorganization. Although Union Federal disputes the Court's subject matter jurisdiction in this case, implicit in the Court's final order confirming the Debtor's chapter 13 plan was a determination that the Court has subject matter jurisdiction. Union Federal had the opportunity to raise the question of jurisdiction prior to

17

confirmation but failed to do so. The order was not appealed and therefore became a final judgment issued by a court of competent jurisdiction. *Shoaf*, F.2d at 1051-53.

Third, as discussed above, the confirmation order was not appealed and is therefore a final adjudication on the merits. *See, e.g., In re Layo*, 2006 WL 2348551 at *4; *Eubanks*, 977 F.2d at 169. Although Union Federal contends that it appeared ready to object to confirmation at the scheduled hearing on May 24, 2006, no timely objection was filed in accordance with the federal and local rules. Consequently, the Court confirmed the Debtor's plan by order entered on May 23, 2006. No appeal was taken. The confirmation order is a final judgment that is protected from collateral attack.

Finally, the same cause of action is involved in both suits. Under the transactional test, a prior final judgment precludes relitigation of all rights of the plaintiff with respect to all or any part of the transaction. *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). The focus is on whether the two actions are based on the same nucleus of operative facts. *Davis v. Dallas Area Rapid Transit*, 3983 F.3d 309, 313 (5th Cir. 2004). "If a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Singh*, 428 F.3d at 571. In this case, the issue of the Court's subject matter jurisdiction was central to the Court's exercise of jurisdiction when it confirmed the Debtor's plan. Union Federal could only prevail on its motion to dismiss based on the Debtor's ineligibility or lack of subject matter jurisdiction if the Court first determined that the confirmation order was entered in error for those same reasons—arguments barred by res judicata. Thus, the same cause of action is involved and res judicata bars the relitigation of the issue of subject matter jurisdiction.

## Conclusion

Based on the foregoing, Union Federal's motion to dismiss is denied. A separate order will be issued.

Signed at Houston, Texas, on September 12, 2006.

MARVIN ISGUR
United States Bankruptcy Judge